# AFFIDAVIT

I, Michael R. Maccarone, being duly sworn, hereby depose and state the following:

## Agent Background

1. I have been an Inspector with the United States Postal Inspection Service ("USPIS") since 2016. I am assigned to the USPIS Boston Division's Rhode Island office. My duties include the investigation of violations of federal law, including mail theft, identity theft, mail fraud, wire fraud, and other financial crimes. Before becoming a United States Postal Inspector, I was a Deputy Sheriff with the State of Rhode Island for approximately twelve years. I have a Bachelor of Arts degree in Justice Studies and Sociology from Rhode Island College.

## Purpose of Affidavit

2. I am investigating Joseph Smith ("Smith") and others in connection with suspected federal criminal offenses, including 18 U.S.C. §§ 641 (theft of government benefits), 1028A (aggravated identity theft), 1341 (mail fraud), 1344 (bank fraud), and 371 (conspiracy to commit these offenses).

3. As set forth below, there is probable cause to believe that between in or around 2015 and 2020, Smith and others stole more than $450,000 in disability benefits issued by the United States Veterans Benefits Administration ("VBA") that were intended for Victim-1. I make this affidavit in support of a criminal complaint charging Smith with theft of government benefits and conspiracy to commit this offense, in violation of 18 U.S.C. §§ 641 and 371, and in support of an arrest warrant for Smith.

4. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all the information that I have learned during this

investigation but includes only the information necessary to establish probable cause for the requested complaint.

## Probable Cause

### Relevant Individuals

5. Smith—the proposed defendant—lives in New Bedford, Massachusetts. He currently receives Social Security retirement benefits. Between approximately November 2014 and December 2020, he lived at 69 Nelson Street in New Bedford.

6. Victim-1 was a veteran of the United States Marine Corps and served in the Marines for over twenty years. Victim-1 passed away in October 2023 from complications surrounding Amyotrophic Lateral Sclerosis ("ALS"). Before being diagnosed, Victim-1 lived at 74 Nelson Street in New Bedford ("74 Nelson Street"). After being diagnosed with ALS in or about August 2015, Victim-1 lived in either a hospital, a nursing home, or a long-term treatment center. At a certain point, he breathed with a ventilator and was dependent upon others for his everyday care.

7. Co-conspirator 1 ("CC-1") was Victim-1's brother. CC-1 passed away on or about August 13, 2022. CC-1 previously lived at 74 Nelson Street with Victim-1.

8. Co-conspirator 2 ("CC-2") is a relative of Smith. She lives in New Bedford, Massachusetts. She is unemployed and receives Social Security disability benefits. She previously lived at 74 Nelson Street with, among others, CC-1 and Victim-1.

9. Individual-1 is Victim-1's daughter.

### Victim-1's Receipt of Veterans' Disability Benefits

10. In or around August 2015, shortly after being diagnosed with ALS, Victim-1 checked into the Providence Veterans Affairs Medical Clinic (the "Providence VA").

11. On or about August 18, 2015, Providence VA social workers applied for veterans' disability benefits for Victim-1. The Providence VA social workers filled out the application on behalf of Victim-1. The application listed 74 Nelson Street, Apartment 2 as Victim-1's address and CC-2 as the point of contact. The application also stated that Victim-1 had a checking account at Bank of America, but did not include the account number. Given his severe health issues, Victim-1 signed the application with an "X." The two Providence VA social workers that assisted with the application signed as witnesses.

12. Prior to this time, Victim-1 had only received veterans' retirement benefits through the Department of Defense in the amount of approximately $1,526 per month. He received these funds via direct deposit into his account at Bank of America.

13. The VBA, which is part of the United States Department of Veterans Affairs, received and evaluated Victim-1's application for veterans' disability benefits (the "disability benefits"). In connection with this process, the VBA ordered a Compensation and Pension exam for Victim-1. On or about August 21, 2015, a VA clinician conducted this exam and shared the findings with the VBA to determine the appropriate level of disability benefits. The clinician found that Victim-1 had various, serious health issues associated with his ALS diagnosis.

14. On or about August 27, 2015, the VBA approved Victim-1's application for disability benefits and awarded him approximately $8,318.95 in monthly payments. The VBA began issuing payments in September 2015. Each month, the VBA mailed a check in this amount to 74 Nelson Street.

15.     However, as noted above, after entering the hospital in mid-2015, Victim-1 never returned to 74 Nelson Street.[1]  Victim-1 did not receive or deposit any of these checks from the VBA.  Instead, as detailed below, Smith and others received and deposited Victim-1's disability benefits checks into accounts that Smith controlled.

### Victim-1 Appoints his Daughter as his Power of Attorney

16.     In or around May 2016, while at Bourne Manor, Victim-1 asked his daughter, Individual-1, to pick up his belongings from 74 Nelson Street, including a black briefcase that contained, among other things, his Social Security card, debit card, military paperwork, and Massachusetts identification card.

17.     On several occasions, Individual-1 attempted unsuccessfully to retrieve this black briefcase from 74 Nelson Street.  Individual-1 confronted both CC-1 and CC-2 about the briefcase, but neither was cooperative.  To date, Individual-1 has been unable to locate this black briefcase.  However, as detailed below, in or around May 2020, a Dartmouth police officer recovered Victim-1's Social Security card and Massachusetts identification card from CC-1, when CC-1 and others, including Smith, tried to re-open a bank account in Victim-1's name.

18.     On or about May 25, 2016, Victim-1 appointed his daughter as Power of Attorney.  She then became his legal guardian and the conservator of his estate.

19.     A few days later, on or about May 28, 2016, Individual-1 became an authorized signer on her father's Bank of America account.  From that point forward, she maintained exclusive control over the account.

---

[1] On or about August 31, 2015, Victim-1 moved to Bourne Manor Nursing Home ("Bourne Manor").  He spent roughly a year at Bourne Manor.  On or about May 17, 2016, Victim-1 was transferred to a hospital in New Bedford.

20. According to Individual-1, in 2016, she did not know that the VBA was also issuing disability payments to her father. As detailed below, she first learned about these payments sometime in the spring of 2020.

### Smith's Receipt of Victim-1's Disability Benefits

21. On or about October 5, 2015, Smith deposited a disability check addressed to Victim-1 into Smith's personal bank account at Webster Bank (the "Smith Webster Bank Account"). The check totaled $8,318.95—it was the first check issued by the VBA in connection with Victim-1's recently approved disability claim. Smith endorsed the check and appears to have fraudulently signed Victim-1's name. Before this deposit, the Smith Webster Bank Account had a negative balance. After depositing the disability check, Smith made repeated cash withdrawals that drew down the account balance to roughly $60 by the end of October 2015.

22. Between approximately December 2015 and April 2016, Smith deposited approximately four disability checks addressed and payable to Victim-1 into the Smith Webster Bank Account. Smith signed each check and appears to have fraudulently signed Victim-1's name on each check.

23. On or about April 4, 2016, Webster Bank placed a hold on the Smith account. According to an internal bank document, Webster Bank employees were concerned that the payee on these checks (Victim-1) did not match the name on the bank account (Smith) where the funds were deposited. A bank employee appears to have instructed "Victim-1" that these checks should be deposited into an account in the name of Victim-1. However, based on the investigation, I have reason to believe that the bank employee provided this instruction to Smith (not Victim-1).

24.     I also have reason to believe that on or about April 27, 2016, Smith and, at least, CC-1, opened a checking account in the name of Victim-1 at Webster Bank (the "Victim-1 Webster Bank Account"). The account signature card listed Victim-1's name, Social Security number, date of birth, and Massachusetts identification card number. It falsely listed Victim-1's address as 89 Purchase Street, New Bedford and included a purported signature in Victim-1's name.[2] Additionally, in connection with the account opening, Webster Bank made a photocopy of Victim-1's Massachusetts identification card.

25.     At the time of the account opening, Victim-1 was suffering from ALS and living at a hospital. He was not in possession of his identity documents, including, but not limited to, his Massachusetts identification card.

26.     CC-1 bore a physical resemblance to Victim-1 and likely impersonated him during the account opening. As detailed below, CC-1 impersonated his brother when he tried to reopen the Victim-1 Webster Bank Account in 2020 after it had been frozen.

27.     I also have reason to believe that Smith was involved in the Victim-1 Webster Bank Account opening, because, as detailed below, he repeatedly accessed the account between 2016 and 2020.

28.     Between in or around April 2016 to May 2020, Smith and others deposited more than forty-five VA disability checks addressed to Victim-1 into the Victim-1 Webster Bank Account. In all, the checks totaled approximately $418,242.48.

---

[2] 89 Purchase Street, New Bedford does not appear to be a valid address. I have recently driven by it, and it is a row of enclosed parking garages that does not appear to have a mailbox. Moreover, I have confirmed with the United States Postal Service that it does not deliver any mail to this address.

29. After depositing a disability check addressed and payable to Victim-1, Smith and others then made several cash withdrawals that drained the account. Smith then replenished the account once he received another Victim-1 VA disability check. For example:

  a. On or about August 29, 2019, Smith deposited a Victim-1 disability check in the amount of $8,749.09 into the Victim-1 Webster Bank Account. Between on or about August 30, 2019 and on or about September 29, 2019, Smith made approximately twenty cash withdrawals from the account totaling roughly $8,700.

  b. On or about September 30, 2019, Smith deposited a Victim-1 disability check in the amount of $8,749.09 into the Victim-1 Webster Bank Account. Between on or about October 1, 2019 and on or about November 2, 2019, Smith made approximately twenty-two cash withdrawals totaling roughly $8,500.

  c. On or about November 4, 2019, Smith deposited a Victim-1 disability check in the amount of $8,749.09 into the Victim-1 Webster Bank Account. Between on or about November 4, 2019 and on or about November 29, 2019, Smith made approximately fifteen cash withdrawals that totaled roughly $7,500.

30. I have reviewed surveillance footage from Webster Bank that begins in August 2019 and runs through May 2020. The surveillance footage captures Smith repeatedly accessing the Victim-1 Webster Bank Account at branch locations in New Bedford and South Dartmouth, Massachusetts.[3]

---

[3] Webster Bank does not have surveillance footage prior to 2019. In addition, several of the surveillance images capture a woman alongside Smith while he accessed the Victim-1 Account. On three occasions, this woman appears to have accessed the account on her own.

31. Below are three still images of Webster Bank surveillance footage that captured Smith accessing the Victim-1 Webster Bank Account in September 2019, October 2019, and April 2020.

   a. On or about September 4, 2019, Smith withdrew $500 from the Victim-1 Webster Bank Account at an ATM in South Dartmouth, Massachusetts. This surveillance image captures Smith accessing this account on that day:

   

   b. On or about October 5, 2019, Smith withdrew $500 from the Victim-1 Webster Bank Account at an ATM in South Dartmouth, Massachusetts. This surveillance image captures Smith accessing this account on that day:

   

c. On or about April 6, 2020, Smith withdrew $500 from the Victim-1 Webster Bank Account at an ATM in South Dartmouth, Massachusetts. This surveillance image captures Smith accessing the account on that day and holding what appears to be United States currency:



32. Below is a photograph of Smith from his Massachusetts Driver's License. There is probable cause to believe that this is the same individual depicted in the bank surveillance images included above:



**The Arrest of Duarte in 2020**

33. In the spring of 2020, Individual-1 learned that Smith and others were receiving disability benefits in her father's name. She called the VA and the VA confirmed that her father had been receiving monthly disability checks. She requested that the VA stop mailing the checks to 74 Nelson Street and began the process of setting up direct deposit for these funds.

34. Individual-1 also contacted Webster Bank to report the fraudulent activity. The bank froze the Victim-1 Webster Bank Account.

35. The next day, on or about May 21, 2020, Webster Bank contacted Individual-1 to let her know that her "father" was at a Webster Bank in Dartmouth, Massachusetts and attempting to open a new account. Individual-1 explained that this was impossible given her father's medical condition.

36. A Dartmouth police officer then responded to the Webster Bank branch. According to the officer, she observed Smith and CC-2 in a car parked alongside the entrance to the bank. Outside the bank, she observed an individual speaking with bank employees. The officer approached the individual, and he identified himself as Victim-1. When asked if he could provide his date of birth, the individual purporting to be Victim-1 could only provide the month and year of his birth—he could not remember the actual day on which he was supposedly born.

37. After consulting with bank employees and learning about Individual-1's phone call to the bank, the officer asked the individual to provide identification. He provided a Massachusetts Identification Card in the name of Victim-1. The officer determined that this individual was not Victim-1. The individual then admitted that he was CC-1 and that Victim-1 was his brother.

38. Bank employees then provided the officer with all the documents that CC-1 had presented to the bank that day to open a new account: Victim-1's Massachusetts identification card, Victim-1's Social Security card, and Victim-1's Webster Bank ATM card. CC-1 refused to explain how he had obtained these documents in his brother's name.

39. After this incident, the VBA began to issue disability benefits intended for Victim-1 into the Victim-1 Webster Bank Account that, beginning in or around May 2020, was controlled by Victim-1's daughter and Power of Attorney, Individual-1. In or around November 2023, the VBA stopped issuing these disability benefits after Victim-1 passed away.

**Conclusion**

40. Based on the information described above and my training and experience investigating financial frauds, there is probable cause to believe that on or about November 4, 2019, Smith conspired with others to knowingly and willfully steal the following money from the United States government: a disability check issued by the VBA and intended for Victim-1 in the amount of $8,749.09, and deposited that check into a bank account that he controlled, in violation of Title 18, United States Code, Sections 371 and 641.

Sworn to under the pains and penalties of perjury.

Respectfully submitted,

*Michael Maccarone* DLC

Michael R. Maccarone
Postal Inspector
United States Postal Inspection Service

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on June 6, 2024

HONORABLE DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE